IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SCOTT ALLEN BOLGER,<br><br>*Defendant*. | Case No. 1:25-MJ-734 (LMB) |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO REVOKE THE DETENTION ORDER**

The United States of America, by and through undersigned counsel, opposes the motion of defendant, SCOTT ALLEN BOLGER, to revoke the detention order in this case.

The defendant is charged with sending a threatening communication in interstate commerce and making false statements to federal investigators. On December 23, 2025, the defendant sent a text message to United States Ambassador Richard "Ric" Grenell, a public official and United States Government Employee, threatening him with a "bullet between [his] eyes." This was after the defendant researched Ambassador Grenell's personal contact information, obtained his personal cell phone number, and contacted him via that number to ensure the line was still active. The defendant then used a Google Voice account to mask his identity and sent a direct message to the Ambassador, threatening him with a bullet to the head. This was not political speech in any sense of the phrase: it was simply a personal, violent threat, delivered not during a political rally, or via social media to a broader audience, but via private message. The defendant ultimately confessed to threatening Ambassador Grenell, but not before attempting to evade accountability by giving federal agents a false name and lying to them about his identity.

1

The defendant has a history of making threats to personal associates spanning years. Those threats are documented in police reports and detailed further below. The incident surrounding the current charges show the defendant is escalating his conduct, now posing a danger to public officials and the community. Given the defendant's confession to this act, and the clearly threatening nature of the text message, combined with his mental instability and escalating conduct, he should not be released.

## BACKGROUND

On December 23, 2025, the Federal Bureau of Investigation (FBI) was notified that Ambassador Grenell, a current public official and United States Government Employee, received a text message from an unknown number ("Phone Number 2"). The message sent to Ambassador Grenell, included below, contained a directed threat of violence.

> Text Message • SMS
> Today 4:48 PM
>
> Step on U street and get a bullet put between your eyes, loyalist pig skin pussy

After receiving the information relating to this incident, the FBI requested an Emergency Disclosure Request from Google for information relating to Phone Number 2. Based on returns from Google, a Google Voice account associated with Phone Number 2 had a recovery telephone number ("Phone Number 1"), which was associate with the defendant.

On December 24, 2025, federal agents sought to interview the defendant at his identified address. When federal agents approached the defendant, and identified themselves as federal agents, the defendant identified himself as "Brain Black" and claimed to not know anyone named

"Scott Bolger." The person whom agents spoke to was later identified as the defendant and confirmed to be the defendant, Scott Bolger.

Shortly after, the defendant was interviewed by investigators, and the defendant confessed to researching Ambassador Grenell's phone number online. The defendant further confessed to calling Ambassador Grenell to confirm the phone number he found online was accurate. The defendant confessed to sending the threatening message to Ambassador Grenell via a Google Voice account associated with Phone Number 2. The defendant also confessed to sending additional harassing messages to another victim in the past.

On December 26, 2025, the defendant was arrested and taken into custody. Federal agents are currently investigating the threatening message the defendant sent to Ambassador Grenell as well as additional threats that have been uncovered during their investigation. Because the investigation has led to several leads requiring additional investigation, the government's understanding of the defendant's prior illicit conduct is not fully known at the time of this filing but is of great concern given the defendant's history of abnormal behavior.

## PROCEDURAL HISTORY

On December 26, 2025, a criminal complaint was issued for the defendant charging him with transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c), and providing materially false statements to a federal agent, in violation of 18 U.S.C. § 1001(a)(2). Dkt. 1. On December 29, 2025, the defendant made his initial appearance before the Honorable William E. Fitzpatrick. Dkt 9. The defendant had his preliminary hearing and detention hearing on December 30, 2025, before Magistrate Judge Fitzpatrick. Dkt. 15. At the hearing, the defendant argued that he should be released. The government objected and the Court ordered the defendant detained on the basis of danger to the community. Dkt. 16. On January 5, 2026, the

defendant filed his motion to revoke the detention order, and the Court set the hearing for the next morning. The transcripts of the detention hearing have been ordered but are still not available.

## LEGAL FRAMEWORK

A defendant ordered detained by a United States Magistrate Judge may, by motion, seek amendment or revocation of his detention order. *See* 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate judge's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992)). The factors the Court must consider in evaluating release are set forth in 18 U.S.C. § 3142(g) and include:

1) the nature and circumstances of the offense charged;
2) the weight of the evidence against the person;
3) the history and characteristics of the person; and
4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

When determining if release is appropriate, the Court shall also take into account if the charged offense is a crime of violence. 18 U.S.C. § 3142(g)(1). While it appears the Fourth Circuit has not directly addressed the issue, several jurisdictions, including the Second Circuit and District Courts in other Circuits have held that 18 U.S.C. § 875(c), which the defendant is charged with, is a crime of violence, for purposes of the Bail Reform Act. *See United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013) (finding that 18 USC § 875(c) (transmitting threats) qualifies as a crime of violence); *United States v. Santoro*, 359 F. Supp. 3d 122 (D. Me. 2019) (applying categorical approach and finding the same); *United States v. Conway*, No. 25-cr-20265 (E.D. Mich. Nov. 3, 2025).

For the reasons that follow, the Court should find, as did the magistrate judge, that there are no conditions other than detention that will reasonably assure the safety of any other person and the community.

## ARGUMENT

Any conditions of release, including those that involve a third-party custodian, are insufficient to ensure the safety of the community, and the defendant should continue to be held detained pending trial. First, the defendant poses a demonstrable risk to victims, public officials, and additional persons that have been identified as potential victims of the defendant's previous threats. This can also be considered a risk of obstruction of justice. Second, the defendant has a history of making violent threats and sending harassing messages, despite law enforcement contacts in the past. Third, the defendant has shown sophistication with technology, especially in utilizing it to threaten persons whom he does not align with, while concealing his identity or technological footprint. In consideration of the 18 U.S.C. § 3142(g) factors, there are no conditions other than detention that will reasonably assure the safety of the community. We consider each of the statutory factors below.

### *Nature and Circumstances of the Offense and Seriousness of Danger to the Public*

The nature and circumstances of the offense, and the seriousness of the danger to any person or the community posed by the defendant's release are serious and weigh in favor of detention. The defendant, as highlighted further below, has shown a history of making threats to other victims. The crime the defendant is charged with here has a real victim who is impacted by this illicit conduct, and the Court should weigh the nature, circumstance, and seriousness accordingly when deciding on the defendant's release, which will likely endanger the community.

Public servants and officials should be able to serve without the fear of violence. Threats of violence, especially those involving firearms, have real consequences. In a world where mass

5

shootings and emotionally charged violence is unfortunately prevalent, every threat is serious. The defendant in this case was apprehended within days of his threat, and there is no way to discern what violent actions he would have committed, if he remained among the public. Ambassador Grenell, the victim in this case, has prepared an impact statement for the Court to consider when weighing whether to release the defendant. *See* Exhibit 1. This statement was read into the record at the detention hearing and handed up to the judge and should be considered again by this Court.

In his motion, the defendant relies on *United States v. Stinson,* 1:25-MJ-373 (E.D. Va. 2025) as a comparable case to argue for release in this case. The present case, however, is distinct for a few important reasons. First, unlike Stinson, the defendant in this case, Bolger, sent his clear and graphic threat directly to the victim, through a private communication channel. The defendant took the time to research and obtain the victim's personal phone number, so he could deliver his threat directly to the victim to instill the fear he intended. Second, Stinson posted his threatening communications on public social media sites X, formerly Twitter, and BlueSky. Third, the defendant used a means to obfuscate his identity by using a Google Voice account to deliver his threat. Stinson posted his threats on his social media page easily attributable to himself. Fourth, the defendant has a history of allegedly making repeated threats to other victims. In *Stinson*, the threats were in a public forum, isolated to a single victim, and were posted to his own public facing account.

In *United States v. Woodard*, 1:25-CR-204 (E.D. Va. 2025), the defendant was charged with making threats over interstate commerce, in violation of 18 U.S.C. § 875(c). In that case, Woodard was ordered detained pending trial after making threats to kill his mailman and other federal officials via phone calls. Like the present case, Woodard, had a history of making threats

6

and communicated his threats directly to the victims. While the Woodard had a prior criminal history, this case is more analogous for the type and means of delivering the threat.

### *Weight of the Evidence*

The weight of the evidence is in this case is strong; the defendant has confessed to sending the threatening communication to Ambassador Grenell. Given the graphic, specific, and directed nature of the threatening communication, the threat is certainly a "true threat." Claims by defense that there is an articulable and reasonable defense based upon First Amendment protected activity are implausible. There is nothing political in the text sent by the defendant to Ambassador Grenell. Many of the cases the defendant cites in his motion involve political rhetoric or threats in a public forum; this case is not analogous to those; the threat here was explicit, private, and did not contain politically direct or indirect prose, other than the word "loyalist," possibly. The defendant clearly communicated to the victim a threat to "put a bullet between [his] eyes." Specifying the location as stepping out on U Street does not in any way make this threat conditional. "U Street" is simply another way of saying being out in public in the city. The defendant's argument would have one believe that he didn't mean the threat seriously if Ambassador Grenell was on T Street or in Georgetown, but if he stepped over to U Street then perhaps. That is a silly reading of the threat.

Without delving too much into the merits of the case, which the government believes are strong, the government would highlight and distinguish the facts in this case from cases put forth in the defendant's motion. In the defendant's motion, defense insinuates that the threat made in this case was potential political hyperbole or made in jest, which is protected speech under *United States v. Watts*, 394 U.S. 705 (1969). The holding in this case actually supports the government's case. In *Watts*, the 'threat' at the center of that case was made during a political rally and focused on a political issue as a trigger. In the present case, the defendant sent the threat to the victim

7

directly, in a private forum, and was explicit about the physical harm that would be inflicted. The defendant stated, "step on U street and get a bullet put between your eyes," which is colloquial for the victim's presence in the District of Columbia.

An on-point case is *United States v. Lockhart*, 382 F.3d 447 (4th Cir. 2004). In *Lockhart*, the defendant in that case delivered a note to a grocery store manager that stated, "if George Bush refuses to see the truth and uphold the Constitution I will personally put a bullet in his head." The Fourth Circuit found that Lockart's threat was a "true threat," and her delivery of the threat did not demonstrate that she was joking, nor was she trying to engage in political debate. The Court also found that the threat was not conditional as to avoid criminal liability. In the present case, the defendant's directed delivery and word construction mirror that of the threat in *Lockhart*. The defendant's choice of words did not involve an openly political issue, nor were made in a comedic fashion.

Furthermore, the defendant attempts to utilize the findings in *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) as a comparison to the threat made by the defendant. That case is also insufficiently comparable to the threat at present for similar reasons outlined above. The threat in that case was again made on a public internet forum and discusses overtly political issues, such as the term and actions of a presidential candidate. The defendant in that case did not take steps to locate the contact information of their victim and privately deliver the threat to the victim with the intent to instill fear, like the defendant did in the present case.

Additionally, the defendant clearly and purposefully made materially false statements to federal agents when he told investigators that his name was "Brian Black." The defendant later confessed his true identity, supporting the materially false statement charge.

Lastly, the defendant in his motion suggests that the sentencing guidelines in this case would be insignificant, likely falling in the 0-6 months incarceration range. The government disagrees with this position and calculation. This calculation does not appear to include appropriate enhancements under § 3C1.1 (attempting to interfere in the investigation), § 3A1.2 (official victim status), or additional calculations for any additional potential charges that may arise from the continuing investigation. The government believes that the appropriate Guidelines will be significant, even accounting for potential reductions.

### *History and Characteristics*

While it does not appear the defendant has any prior convictions, there are several troubling and credible allegations, including through the defendant's own confession, that the defendant has sent harassing or threatening communications to others in the past, including a previous roommate and ex-girlfriend.

In 2022, the defendant's ex-girlfriend reported receiving threatening messages containing indecent images of herself via social media direct messages from an unknown account. The victim reported receiving additional emails that contained threats of violence from at least three Proton Mail email addresses. In a subsequent follow up report in 2023, the defendant's ex-girlfriend reported additional messages with additional images, including from two phone numbers and a Proton Mail email. The victim in these instances reported that she believes the defendant was responsible for the messages given some of the information contained in the messages was only known to the defendant. Additionally, one of the phone numbers in the 2023 reported incident produced an association with the defendant.

The defendant also admitted to federal investigators to sending harassing messages to a former roommate. While the government does not have additional information at this time

regarding this incident, the government highlights this admission to demonstrate the defendant's pattern of sending threatening and harassing messages. The government would also highlight that the previous reports relate to individuals that were personally known by the defendant. The threats in this case show an escalation of behavior because the defendant did not know Ambassador Grenell. Defense counsel did not address the previous threats the defendant has made it its filing. The government represented some, but not all, of these additional threats the defendant has committed during the detention hearing before Magistrate Judge Fitzpatrick. The government would note that it has requested the transcript for that hearing, but it has not received it prior to this filing.

The defendant also has a history of self-harm, including a documented suicide attempt. While in custody, the defendant was placed on "suicide watch," given the credible concern that he may attempt to harm himself. Releasing the defendant also poses an articulable harm to himself.

Additionally, the defendant has a history of concealing his illegal conduct and therefore poses a risk to the community. Despite family support in the area and cohabiting with a significant other, the defendant persisted in this illegal and harmful conduct. In their motion, defense suggests that the defendant's parents may be a suitable third-party custodian. The government does not believe that, even with a third-party custodian, the potential danger to the community can be addressed given the defendant's prior conduct and use of technology.

For these reasons, the government does not believe the defense's proposition of a third-party custodian adequately addresses the potential danger to the community, and there are no set of conditions of release that may reasonably assure the safety of the community.

## CONCLUSION

The defendant's illegal conduct in this case and behavior leading up to his arrest is extremely serious. He poses a danger to the safety of others, himself, and the community if released, no matter how strict the conditions. Accordingly, the government respectfully requests that the Court deny the defendant's motion and order the defendant be detained pending trial

Respectfully submitted,

LINDSEY HALLIGAN
UNITED STATES ATTORNEY
AND SPECIAL ATTORNEY

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

ROBERT K. MCBRIDE
FIRST ASSISTANT
UNITED STATES ATTORNEY

By: _____/s/_____
Jacob A. Mercer
Special Assistant United States Attorney
Russell L. Carlberg
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Ave.
Alexandria, Virginia 22314
Phone: 703-299-3700
Email: Jacob.Mercer@usdoj.gov